# 2006 DTA 35

## TRIBUNAL DE CIRCUITO DE APELACIONES
## REGIÓN JUDICIAL DE PONCE
## PANEL X

JORGE I. MADERA RODRÍGUEZ
Recurrido

v.

VCI CONSTRUCTION INC; ALL ENGINEERING SERVICES,
UNITED SURETY & INDEMNITY CO, Y MUEBLES LUGO INC.
Recurrentes

Núm. KLRA-2005-00696

San Juan, Puerto Rico, a 17 de enero de 2006

Panel integrado por su Presidente, el Juez Brau Ramírez,
y los Jueces Colón Birriel y Hernández Torres

Colón Birriel, Juez Ponente

**TEXTO COMPLETO DE LA SENTENCIA**

**I**

VCI Construction, Inc. (en adelante, "*el recurrente*") solicita la revisión de una **Resolución** emitida el 30 de agosto de 2005 y notificada el 31 de ese mes y año, por el Departamento de Asuntos del Consumidor, Oficina Regional de Ponce en el caso *Jorge I. Madera Rodríguez v. VCI Construction, Inc. y otros*, Querella Número 600007133, Sobre: Vicios de construcción. En el referido dictamen, el Departamento de Asuntos del Consumidor (en lo sucesivo, el "*DACO*") declaró **Con Lugar** la Querella presentada y ordenó solidariamente al recurrente y a All Engineering Services sustituir aquellos gabinetes infectados con polilla en la residencia adquirida por el recurrido, Jorge I. Madera Rodríguez en la Urbanización Brisas del Valle Calle 2 E-4 en Juana Díaz, P.R., o en su defecto, sufragar $1,500, dentro de los quince (15) días siguientes al archivo en autos de la resolución recurrida.

Mediante *Resolución* de 5 de octubre de 2005, concedimos término al recurrido para presentar su alegato. El 5 de diciembre de 2005, el DACO presentó su alegato, solicitando la confirmación de su determinación. No obstante lo anterior y vencido el término concedido, el recurrido no presentó su alegato. Por otro lado, el 20 de diciembre de 2005, el recurrente presentó *Réplica a Alegato*. Resolvemos sin el beneficio de la comparecencia del recurrido, no sin antes exponer el trasfondo fáctico de lo acaecido en la agencia recurrida.

**II**

El 28 de abril de 2004, el recurrido, mediante escritura de segregación, liberación y compraventa, adquirió una residencia en la Urbanización Brisas del Valle Calle 2 E-2, en el Municipio de Juana Díaz, Puerto Rico. La urbanizadora de dicho proyecto lo fue All Engineering Services y la constructora VCI Construction, Inc.

Tras comenzar a residir en la vivienda, el recurrido notó ciertos defectos en los gabinetes de la cocina, por lo cual requirió a Muebles Lugo, Inc., suplidora de los muebles, quienes intentaron reparar el alegado desperfecto, no obstante, la condición continuó.

Transcurridos alrededor de cuatro meses de la firma de las escrituras, el 27 de agosto de 2004, el recurrido le reclamó mediante carta los desperfectos en los gabinetes y filtraciones en el techo al recurrente y a All Engineering Services. Ante el incumplimiento de éstos con efectuar las labores de reparación requeridas por el recurrido, el 19 de octubre de 2004, éste presentó una *Querella* en la Oficina Regional de Ponce del DACO contra

VCI Construction, Inc., All Engineering Services y United Surety & Indemnity. Alegó, en lo pertinente, que los gabinetes de la cocina de la residencia tenían polilla y que sufría de filtraciones en el techo.

El 10 de diciembre de 2004, el señor Edwin Montes, técnico de construcción del DACO, realizó una inspección a la residencia. En su informe, del 18 de enero de 2005, el técnico del DACO señaló haber observado en el área de los gabinetes un polvo amarillento. Recomendó el cambio del tope, el área donde ubica el extractor y sellado del techo. Estimó mil quinientos ($1,500) dólares, como costo aproximado para las labores.

Tras otros incidentes, el 17 de mayo de 2005, el recurrido presentó *Querella Enmendada* para incluir como co-querellado a Muebles Lugo, Inc. Allá en o para el 25 de mayo de 2005, Muebles Lugo, Inc. presentó su *Contestación a Querella*, levantando como defensas afirmativas que la acción estaba prescrita y que al momento de entregar los gabinetes los mismos no tenían polilla.

Así las cosas, el 3 de junio de 2005, el técnico de construcción del DACO, llevó a cabo una segunda inspección ocular en la residencia del recurrido. Observó en una de las gavetas del gabinete un polvo amarillo producido por un insecto de alas. Estimó el daño producido en mil ochocientos ($1,800) dólares. Además, expresó que según el señor Lugo, representante de Muebles Lugo, Inc., la garantía de los gabinetes había expirado, por lo cual no podía responsabilizarse por la presencia del insecto. Ante la situación, recomendó se realizare vista administrativa.

Posteriormente, el 15 de agosto de 2005, se llevó a cabo la vista administrativa en el DACO, a la cual asistieron todas las partes a excepción del co-querellado United Surety & Indemnity y su representación legal, no obstante, haber sido debidamente notificados y citados. Durante la vista, el recurrente argumentó que la querella estaba prescrita, planteamiento que no fue acogido.

Celebrada la vista correspondiente, el 30 de agosto de 2005, el DACO emitió la resolución recurrida. Determinó que habiéndose vendido la residencia con un vicio oculto en los gabinetes que los hacía impropios para su uso, la querella se regía por las disposiciones del Código Civil relativas al saneamiento por vicios ocultos. Aplicando a la situación el Artículo 1350 del Código Civil, 31 L.P.R.A. § 3801, decidió que el recurrente y All Engineering Services estaban obligados a responder solidariamente por el defecto oculto que tenían los gabinetes. Estimó que los defectos que presentaban los gabinetes eran anteriores a la venta, por lo cual ordenó el reemplazo de los gabinetes o en su defecto el pago de $1,500.

Inconforme con la determinación, el 28 de septiembre de 2005, el recurrente presentó su recurso. Adujo que incidió el DACO: 1) al declarar Con Lugar la querella a pesar de que la misma estaba prescrita; 2) al concluir que existe un vicio oculto de construcción, con la mera alegación de la querella, sin mediar evidencia alguna de la causa del mismo; y 3) al excluir de la orden de reemplazo de los gabinetes al co-querellado Muebles Lugo, Inc. a pesar de que tenía jurisdicción sobre él.

Como hemos informado, mediante *Resolución* de 5 de octubre de 2005, concedimos al recurrido treinta (30) días, a partir de la notificación, para presentar su alegato. El 5 de diciembre de 2005, el DACO presentó su alegato, solicitando la confirmación de su determinación. Empero, el recurrido nunca compareció.

### III

Resulta menester examinar los preceptos del Código Civil referentes a los vicios ocultos. Las acciones de saneamiento por vicios ocultos están reglamentadas, entre otros, por los Artículos 1373 al 1377 del Código Civil, 31 L.P.R.A. § 3841 a 3845.

El Artículo 1373, 31 L.P.R.A. § 3841, dispone que *"[e]l vendedor estará obligado al saneamiento por los defectos ocultos que tuviere la cosa vendida si la hacen impropia para el uso a que se le destina, o si disminuyen*

*de tal modo ese uso que de haberlos conocido el comprador no la habría adquirido, o habría dado menos precio por ella; pero no será responsable de los defectos manifiestos o que estuviesen a la vista, ni tampoco de los que no lo estén, si el comprador es un perito que por razón de su oficio o profesión, debía fácilmente conocerlos."* Por su parte, el Artículo 1374 de dicho ordenamiento, 31 L.P.R.A. § 3842, establece que *"[e]l vendedor responde al comprador del saneamiento por los vicios o defectos ocultos en la cosa vendida aunque los ignorase. **Esta disposición no regirá cuando se haya estipulado lo contrario, y el vendedor ignorara los vicios o defectos ocultos de lo vendido."*** (Énfasis suplido.) Es decir, en ausencia de una renuncia de que lo vendido no está sujeto al saneamiento, si aparece un vicio oculto el comprador puede optar, entre otras acciones, por desistir del contrato, abonándosele los gastos que pagó (acción redhibitoria), o rebajar una cantidad proporcional del precio a juicio de peritos (acción estimatoria o *quanti minoris*). Artículo 1375 del Código Civil, 31 L.P.R.A. § 3843; *Márquez v. Torres Campos*, 111 D.P.R. 854 (1982).

Acorde con tales disposiciones, la jurisprudencia ha enumerado ciertos requisitos para que proceda la acción de saneamiento de vicios ocultos. En *Ferrer Delgado v. General Motors Corp.*, 100 D.P.R. 246, 255-256 (1971), nuestro Tribunal Supremo expresó:

*"La doctrina preconiza que para que pueda ser objeto de saneamiento los vicios ocultos, éstos: (1) no deben ser conocidos por el adquirente, (2) el defecto debe **ser grave** o suficientemente importante para hacer la cosa impropia para el uso a que se le destina o que disminuya de tal modo este uso que, de haberlo conocido el comprador, no la habría comprado o habría dado menos precio por ella, (3) **que sea preexistente a la venta,** y (4) que se ejercite la acción en el plazo legal, que es el de seis meses contados desde la entrega de la cosa vendida. Artículo 1379 del Código Civil, 31 L.P.R.A. § 3847."* (Énfasis suplido.)

La preexistencia del vicio al momento de la venta es un requisito esencial para que prospere la acción de saneamiento de vicios ocultos, según la doctrina científica. J. Manresa, *Comentarios al Código Civil Español*, 6ta ed., Madrid, Reus, 1969, t. X, Vol. I, a las págs. 338-339, expone al respecto:

*"No creemos preciso decir que la existencia del vicio o defecto ha de referirse al momento en que se celebra el contrato, pues de los que con posterioridad puedan afectar a la cosa, no se puede hacer cargo alguno al vendedor. Pero si esto es evidente, no lo ha parecido tanto el criterio que deba adoptarse sobre si al comprador demandante corresponde la prueba de que el defecto que alega como fundamento de la acción redhibitoria existía al tiempo del contrato, o si, por el contrario, debe entenderse que hay una presunción a su favor que le releva del trabajo de probar.*

*Si el defecto existe en el momento en que se interpone la demanda, se ha dicho, lo probable será que existiese al otorgarse el contrato, de donde se deduce que una presunción ampara al comprador. Mas por razonable que a primera vista pueda parecer este criterio, no podemos suscribirlo, y entendemos, por el contrario, que **el demandante debe probar los hechos todos en que funda su demanda, o sea, no solamente la existencia del defecto redhibitorio en el momento en que la interpone, sino en aquél otro en que contrató."*** (Énfasis suplido.)

M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, 2da ed., Madrid, Editorial Revista de Derecho Privado, 1991, t. XIX, a las págs. 372-373, añade:

*"(A) ...*

*(B) El vicio ha de ser preexistente*

*No lo exige específicamente el Código, ... pero se puede inducir del artículo [1377] que contempla un supuesto conexo y relacionado ("si la cosa vendida tenía algún vicio oculto al tiempo de la venta"), **lo exige la doctrina y lo requiere la jurisprudencia.** (Énfasis suplido.)*

*La prueba de la preexistencia del vicio o defecto corresponde al comprador y ello ofrece no pocas dificultades; precisamente la fijación de plazos cortos para el ejercicio de la acción tiene su fundamento en la dificultad de probar la génesis del vicio cuando ha transcurrido demasiado tiempo desde la compraventa o bastará con demostrar que el vicio existe al ejercitar la acción, pues ninguna presunción legal permite retrotraer tal prueba al momento del contrato."* (Énfasis suplido.)

El plazo de seis (6) meses que establece el Artículo 1379 del Código Civil, para instar la acción de saneamiento por vicios ocultos, no se cuenta desde la fecha de la perfección del contrato, sino desde el día en que se interrumpieron las gestiones de inteligencia entre las partes, ya que las constantes reclamaciones y contestaciones de los interesados obstan a la prescripción. Este plazo es de aplicación a aquellos contratos de venta en los cuales no hay un término de garantía para la reparación gratuita de la cosa vendida por cuenta del vendedor. *Ferrer Delgado*, 100 D.P.R., a la pág. 256; *Casa Jaime Corp. v. Castro*, 89 D.P.R. 702, 704 (1963).

Como primer señalamiento de error, el recurrente alegó que incidió el DACO al concluir que la reclamación no había prescrito. No le asiste la razón. Veamos porqué.

En el presente caso, el recurrido presentó su querella ante el DACO el 19 de octubre del 2004, es decir, dentro de los seis (6) meses de haberse otorgado la escritura de compraventa. Nótese, que la fecha de otorgamiento de la escritura de compraventa fue el 28 de abril de 2004, por lo cual al 19 de octubre, sólo habían transcurrido cinco (5) meses y veintiún (21) días. Además, debemos resaltar el hecho de que la última gestión de inteligencia entre las partes fue la misiva de 27 de agosto de 2004, en la cual el recurrido reclamó nuevamente la reparación de los defectos de los gabinetes. Por tratarse de una reclamación de saneamiento por vicios ocultos, conforme al término legal dispuesto por Artículo 1379 del Código Civil, el recurrido disponía de seis (6) meses para ejercer su acción, reclamación que fue instada de conformidad. En consecuencia, el primer error no fue cometido.

Para evaluar el segundo señalamiento de error referente a que el DACO concluyó la existencia de un vicio oculto con las meras alegaciones de la querella, sin mediar la causa para el mismo, es necesario esbozar la normativa relativa al alcance de la revisión judicial de las determinaciones de los organismos administrativos. Veamos.

La Sección 4.1 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. § 2171, permite que se solicite al Tribunal de Apelaciones la revisión de decisiones administrativas. Al respecto, es norma de derecho claramente establecida que los tribunales apelativos han de conceder gran consideración y deferencia a las decisiones administrativas en vista de la vasta experiencia y conocimiento especializado de la agencia. *Socorro Rebollo v. Yiyi Motors,* Op. de 13 de enero de 2004, **2004 J.T.S. 4**, a la pág. 501; *Pacheco Torres v. Estancias de Yauco, S.E.,* Op. de 30 de septiembre de 2003, **2003 J.T.S. 148**, a la pág. 210; *T. Jac, Inc. v. Caguas Centrum Limited,* 148 D.P.R. 70, 80 (1999); *Agosto v. Fondo del Seguro del Estado,* 132 D.P.R. 866, 879 (1993). Por lo tanto, la persona que alegue lo contrario tendrá que presentar evidencia suficiente para derrotar tal presunción, no pudiendo descansar únicamente en meras alegaciones. *Pacheco Torres,* **2003 J.T.S. 148**, a las págs. 210-211.

La revisión judicial es limitada. Sólo determina si la actuación administrativa fue una razonable y cónsona con el propósito legislativo o si por el contrario fue irrazonable, ilegal o medió abuso de discreción. *Mun. de San Juan v. J.C.A,* 149 D.P.R. 263, 280 (1999); *T. Jac, Inc.,* 148 D.P.R., a la pág. 884; *Com. Vec. Pro-Mej., Inc. v. J. P.,* 147 D.P.R. 750, 761 (1999); *Fuertes y otros v. A.R.P.E.,* 134 D.P.R. 947, 953 (1993).

La Sección 4.5 de la Ley de Procedimiento Administrativo Uniforme (L.P.A.U.), 3 L.P.R.A. § 2175, establece que *"[l]as determinaciones de hechos de las decisiones de las agencias serán sostenidos por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo".* Véase: *Otero Mercado*

*v. Toyota de Puerto Rico Corp.,* Op. de 3 de febrero de 2005, **2005 J.T.S. 13**, a la pág. 684; *Com. Vec. Pro-Mej., Inc.,* 147 D.P.R., a la pág. 762; *Metropolitana S.E. v. A.R.P.E.,* 138 D.P.R. 200, 213 (1995). Las decisiones administrativas tienen a su favor la presunción de legalidad y corrección. *Murphy Bernabe v. Tribunal Superior,* 103 D.P.R. 692, 699 (1975). Esta presunción de regularidad y corrección *"debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla".* *Rivera Concepción v. ARPE,* 152 D.P.R. 116, 123 (2000); *Henríquez v. Consejo de Educación Superior,* 120 D.P.R. 194, 210 (1987). Esta disposición recoge estatutariamente la norma jurisprudencial que establece que, de ordinario, los tribunales no deben intervenir con las determinaciones de hechos de un organismo administrativo si éstas se apoyan en prueba suficiente que surja del expediente considerado en su totalidad. *Otero Mercado,* 2005 J.T.S. 13, a la pág. 685; *Rivera Concepción,* 152 D.P.R., a la pág. 123; *Com. Vec. Pro-Mej., Inc.,* 147 D.P.R., a la pág. 761 *Fac. C. Soc. Aplicadas Inc. v. C.E.S.,* 133 D.P.R. 521, 532-533 (1993).

La evidencia sustancial según ha sido definida como *"aquella evidencia relevante que una mente razonable podría aceptar como adecuada para sostener una conclusión".* *Otero Mercado,* **2005 J.T.S. 13**, a la pág. 685; *Hilton Hotels v. Junta de Salario Mínimo,* 74 D.P.R. 670, 687 (1953). Por ello, la parte afectada por una determinación de hecho de una agencia debe, en primer lugar, *"demostrar que existe otra prueba en el récord que reduzca o menoscabe el valor probatorio de la evidencia impugnada, hasta el punto de que no se pueda concluir que la determinación de la agencia fue razonable de acuerdo con la totalidad de la prueba que tuvo ante su consideración".* *Ramírez v. Depto. de Salud,* 147 D.P.R. 901, 905 (1999); *Com. Vec. Pro-Mej., Inc.,* 147 D.P.R., a la pág. 761. Si la parte afectada no demuestra la existencia de otra prueba, las determinaciones de hechos de una agencia deben ser sostenidas por el tribunal revisor. *Ramírez,* 147 D.P.R., a la pág. 905. Esto persigue evitar que los tribunales sustituyan el criterio de la agencia por el suyo propio.

Las cuestiones de derecho, contrarias a las de hechos, que no involucren interpretaciones efectuadas dentro del ámbito de especialización de la agencia son revisables en toda su extensión. Véanse: *Pacheco Torres,* 2003 J.T.S. 148, a la pág. 211; *San Antonio Maritime v. Puerto Rican Cement,* 153 D.P.R. 374, 396 (2001); *T. Jac, Inc.,* 148 D.P.R., a la pág. 81. Sin embargo, esta revisión total no implica que los tribunales revisores tengan la libertad absoluta de descartar libremente las conclusiones e interpretaciones de la agencia. *Otero Mercado,* **2005 J.T.S. 13**, a la pág. 685.

Nuestro esquema jurídico establece que el tribunal revisor hará una evaluación a la luz de la totalidad del expediente.

Confrontado con un resultado distinto del obtenido por la agencia, el tribunal debe determinar si la divergencia responde a un ejercicio razonable de la discreción administrativa fundamentado, por ejemplo, en una pericia particular, en consideraciones de política pública o en la apreciación de la prueba que tuvo ante su consideración. El tribunal podrá sustituir el criterio de la agencia por el propio, sólo cuando no pueda hallar una base racional para explicar la decisión administrativa.

*Misión Ind. P.R. v. J.P.,* 146 D.P.R. 64, 134 (1998).

A través del desarrollo jurisprudencial, nuestro Tribunal Supremo ha determinado que la deferencia reconocida a la decisión de una agencia administrativa, cede en las siguientes circunstancias: (1) cuando no está basada en evidencia sustancial, (2) cuando el organismo administrativo ha errado en la aplicación de la ley, y (3) cuando ha mediado una actuación irrazonable o ilegal. *T. Jac, Inc.,* 148 D.P.R., a la pág. 81. Si el tribunal no se encuentra ante alguna de estas situaciones, aunque exista más de una interpretación razonable de los hechos, debe sostener la que seleccionó la agencia encargada. *"La cuestión es si la determinación de la agencia es razonable y no si la agencia logró la determinación correcta del hecho o los hechos."* Demetrio Fernández Quiñones, *Derecho Administrativo y Ley de Procedimiento Administrativo Uniforme,* Bogotá, Colombia, 2da. Ed., 2001, a la pág. 543.

En el caso de autos, el DACO realizó dos inspecciones oculares para constatar las aseveraciones sobre la existencia de los defectos alegados por el recurrido. Dicha evidencia obra en el expediente administrativo y la agencia le impartió la credibilidad que consideró apropiada. No obstante, del expediente ante nuestra consideración no se desprende que el recurrente ni All Engineering Services hayan presentado alguna evidencia para controvertir las alegaciones presentadas por el recurrido en su querella y los hallazgos de las inspecciones oculares realizadas por el técnico del DACO. Ante ese marco fáctico y con esa evidencia ante su consideración, el foro administrativo estuvo en posición de determinar si era procedente o no la reclamación del recurrido.

De conformidad con el trasfondo jurisprudencial al que hemos hecho referencia, podemos colegir que las determinaciones de los organismos administrativos se presumen correctas, salvo la existencia de evidencia sustancial en el expediente que demuestre que el dictamen fue uno arbitrario o caprichoso. Ante la ausencia de evidencia en el expediente administrativo que impugne la determinación de la agencia y del recurrente no aportar otra evidencia para sostener sus planteamientos, nos resulta imposible no conceder deferencia al dictamen del DACO ordenando el reemplazo de los gabinetes de la cocina de la residencia del recurrido, ya que de la evidencia que obra en autos y que fue analizada e interpretada a la luz de nuestro derecho positivo no existe cabida para otra conclusión. Por todo lo cual, debemos concluir que no incidió el DACO en el segundo señalamiento de error. Como tercer y último señalamiento de error, el recurrente adujo que incidió el DACO al no imponer responsabilidad a Muebles Lugo, Inc. a pesar de tener jurisdicción para ello. Veamos.

El organismo administrativo en el ejercicio de su discreción e interpretando el *Reglamento para Regular las Distintas Actividades que se Llevan a Cabo en el Negocio de la Construcción de Viviendas Privadas en Puerto Rico* que entró en vigor el 16 de septiembre de 1977, concluyó que el mismo no era de aplicación en cuanto a Muebles Lugo, Inc. se refiere, ya que sus disposiciones sobre gabinetes no contienen nada relacionado a la infección con polillas u otros insectos, y el mismo se limita a defectos en los materiales o en cuanto a la mala instalación. Ante la ausencia de disposición reglamentaria especifica, el DACO utilizó las normas del Código Civil relacionadas con el saneamiento por vicios ocultos para tramitar la reclamación. No obstante, dichos preceptos no eran extensibles a Muebles Lugo, Inc. en el negocio de la compraventa de la residencia del recurrido, pues no fungió como vendedor, por lo cual no le es de aplicación la responsabilidad exigida por el Artículo 1350 del Código Civil. En resumen, no incidió el DACO en el tercer señalamiento de error.

En atención a lo dicho, confirmamos la resolución recurrida emitida por el DACO el 30 de agosto de 2005.

Lo acordó el Tribunal y lo certifica la Secretaria del Tribunal de Apelaciones.

Laura M. Vélez Vélez
Secretaria del Tribunal de Apelaciones